IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO PENA SOTO,<br><br>                    Petitioner,<br><br>              vs.<br><br>R. LOPEZ, Warden, California State<br>Prison, Corcoran,<br><br>                    Respondent. | No. 2:11-cv-00787-JKS<br><br>MEMORANDUM DECISION |

Isidro Pena Soto, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Soto is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Corcoran. Respondent has answered, and Soto has replied. Soto has also requested an evidentiary hearing.

I. BACKGROUND/PRIOR PROCEEDINGS

Soto was convicted by a jury of second-degree murder (Cal. Penal Code § 187(a)), driving under the influence of alcohol causing injury (Cal. Vehicle Code § 23153(a)), driving while having a blood alcohol level in excess of 0.08 % causing injury (Cal. Vehicle Code § 23153(b)), possession of methamphetamine for sale (Cal. Health & Safety Code § 11378(a)), transportation of methamphetamine (Cal. Health & Safety Code § 11379(a)), and gross vehicular manslaughter while intoxicated (Cal. Penal Code § 191.5(a), (d)). The jury also found that in driving under the influence (§ 23153(a)) and driving with a blood alcohol level in excess of 0.08% (§ 23153(b)), Soto had inflicted great bodily injury (12022.7(a)), causing those two charges to become serious felonies (Cal. Penal Code § 1192.7(c)(8)). On September 4, 2008, the

trial court sentenced Soto to a prison term of fifteen years to life on the second-degree murder

conviction, plus a consecutive term of four years on the transportation of methamphetamine

conviction.  Sentences on all other charges were stayed (Cal. Penal Code § 654).  The California

Court of Appeal reversed Soto's conviction on the two driving under the influence charges (Cal.

Penal Code §§ 2153(a), (b)) and affirmed on all other convictions and the sentence in an

unpublished decision,[1] and the California Supreme Court denied review on December 28, 2009.

On April 22, 2010, Soto filed a petition for habeas relief in the Solano County Superior Court,

which was denied in an unreported, reasoned decision.  The California Court of Appeal

summarily denied Soto's petition for habeas relief without opinion or citation to authority, and

the California Supreme Court denied review on January 12, 2011.  Soto timely filed his Petition

for relief in this Court on September 30, 2010.

The fact underlying Soto's conviction, as recited by the California Court of Appeal:

Kent Boone drove over the crest of an incline on Highway 12 in Solano
County around 6:15 a.m. on March 31, 2007, and was met head on by a Ford
Expedition driven by [Soto].  Boone died at the scene from blunt force injuries
suffered in the collision.

The accident was witnessed by Anthony Brazil, who testified that he was
driving east on Highway 12, a two-lane road with solid double lines in the middle,
when he noticed [Soto's] vehicle in his rear view mirror approaching rapidly and
swerving back and forth between the lanes. Brazil slowed and moved to the shoulder
of the road to avoid [Soto], who passed by at a speed Brazil estimated to be 85 to 90
miles per hour.  As [Soto] went up an incline, he drifted over into the westbound lane
and collided with Boone's vehicle, which emerged going in the other direction.

[Soto] exhibited signs of being under the influence of alcohol, but field
sobriety tests could not be administered because his leg was trapped under the
dashboard of the Expedition.  [Soto] was extricated from the vehicle and flown to a
hospital, where a sample of his blood was drawn sometime between 9:27 and 9:55
a.m. that morning.  Prosecution analysis of the blood sample found an alcohol
content of .10 percent; defense analysis found .09 percent.  The prosecution's expert

_____

[1] *People v. Soto*, No. A123133, 2009 WL 3111060 (Cal. Ct. App. Sept. 9, 2009).

estimated that [Soto] had a blood-alcohol content of .154 at the time of the accident; [Soto's] expert estimated .16.

[Soto] had completed an 18-month alcohol abuse treatment program three months before the accident. Records showed that he never missed a class in the program. The program counselor, Herman Uquillas, testified that the main point of the treatment was to underscore the risks of driving under the influence. Uquillas said that he told [Soto] 26 times face-to-face and 12 times in classes about the risk to life created by drunk driving, and warned him that killing someone while driving under the influence could constitute murder. [Soto] signed a plea form in one of his prior drunk driving cases in which he acknowledged that "it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of that driving, someone is killed, I can be charged with murder."

Uquillas testified that "when you are with alcohol in your body, your judgment goes away," and [Soto's] expert on the effects of alcohol, Kenton Wong, testified that alcohol drinkers have "'reduced inhibition'" and "may take risks that they wouldn't normally take . . . ." Wong said that it would not be unusual for someone waking up with a high blood-alcohol content to "not be able to accurately assess how intoxicated he is, to feel like he was fine to drive." Richard Bowden, the prosecution's blood-alcohol analyst, testified that a person driving under the influence of alcohol could be inclined to take more risks.

A highway patrol officer who inspected the Expedition for the prosecution found no pre-existing mechanical problems that could have caused the accident. Approximately two pounds of methamphetamine were found under the back seat.

The jury was instructed in accordance with CALCRIM No. 520 that [Soto] did not act with implied malice unless, "[a]t the time he acted, he knew his act was dangerous to human life," and "[h]e deliberately acted with conscious disregard for human life." In closing argument, [Soto's] counsel described him as "the poster boy . . . for gross vehicular manslaughter, not murder." Counsel argued that [Soto] was "too impaired" from intoxication "to understand the risks that he was creating . . . when he got into the car to drive." The prosecution argued that [Soto] "actually subjectively knew that his actions could kill somebody."[2]

## II.  ISSUES RAISED

Soto raises three issues:  (1) ineffective assistance of trial counsel (failure to conduct an

adequate pretrial investigation and move to exclude the evidence of a blood test); (2)  appellate

counsel's failure to raise the issue of ineffective assistance of trial counsel and insufficiency of

---

[2] *Soto*, 2009 WL 3111060 at *1-2.

the evidence (blood test tainted) rendered appellate counsel's representation ineffective; and (3) because his blood was improperly drawn and the blood test was tainted, there was insufficient evidence to support the conviction.  Respondent does not assert any affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the

---

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412 (alteration added).

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are

(continued...)

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[7]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[8]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.*

---

[6](...continued)
directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

*Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[12]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[13]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[14]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[15]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the

---

[12] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[13] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[14] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[15] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[16] This is considered as the functional equivalent of the appeal process.[17]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[18]  This presumption applies to state-trial courts and appellate courts alike.[19]

## IV.  DISCUSSION

### A.      Evidentiary Hearing

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[20]   In his petition for habeas relief in the Solano County Superior Court, Robinson included just immediately below the space for the case number

---

[16] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[17] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[18] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[19] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[20] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

"[Evidentiary Hearing Requested]."[21]  Robinson did the same in his habeas petition in the California Court of Appeal.[22]  In his prayer for relief in the Solano County Superior Court Soto included the phrase "grant an Evidentiary Hearing to resolve any disputed facts," and in his petition to the California Court of Appeal the phrase "[g]rant an Evidentiary Hearing to resolve issues of Fact."  In this Court, as was the case in the state courts, Soto does not identify what evidence or testimony is to be proffered at an evidentiary hearing.  Nor did Soto identify any contested factual issue that required the California courts to hold an evidentiary hearing to resolve.  Thus, it cannot be said on the record that the state courts precluded him from developing the factual basis for his claim.[23]

Because Soto has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve, his request for an evidentiary hearing will be denied.

**B.     Merits**

Because it impacts both of Soto's ineffective assistance of counsel grounds, the Court will address Soto's third ground, insufficiency of the evidence, first.

<u>Ground 3:  Insufficiency of the Evidence</u>

Soto contends that, because the blood used in the test that supported his conviction was drawn in violation of California's regulations, it was "tainted" and could not support his

---

[21] Lodged Doc. 10.

[22] Lodged Doc. 12.

[23] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

conviction.  Soto raised this claim in his state habeas petitions.  The Solano County Superior

Court rejected Soto's contention, holding:

> [Soto] revised [*sic* raised?] the argument there was insufficient evidence to convict because the blood test results were unreliable, on direct appeal.  Issues that are raised and rejected on direct appeal cannot be raised again through habeas proceedings.  (*In re Waltreus* (1965) 62 Cal.2d 218, 225.)  Because [Soto] raised this claim on appeal, he cannot repeat it now.[24]

While Soto did, in fact, attack the blood test evidence on direct appeal, he did so in the

context of challenging the failure of the trial court to give an instruction.  Thus, technically, the

Solano County Superior Court was incorrect in its determination that the issue had been

presented in terms of insufficiency of the evidence.  The California Court of Appeal recited the

facts underlying the "tainted blood" argument as follows:

> (1) *Record*
>
>    Highway Patrol Officer Shauna Wooden was dispatched to the hospital to obtain [Soto's] blood sample.  She testified that a phlebotomist was unable to obtain sufficient blood for a sample from veins in [Soto's] hands and feet, and that a doctor was called in to draw blood from a femoral artery.  Wooden noted in her report that the phlebotomist used a nonalcoholic swab to cleanse the area before inserting the needle.  Wooden said that the doctor "would have used a nonalcoholic swab as well," although that fact was not noted in her report.
>
>    Blood analyst Bowden testified on cross-examination that California regulations require the use of nonalcoholic swabs because alcohol on the swab might affect the test results.  He also agreed that the regulations required that blood be drawn from a vein.
>
>    The court refused to give the following jury instruction requested by the defense:  "in evaluating blood test results, you may consider whether the person who collected the blood sample used for testing blood-alcohol concentration followed the regulations of the California Department of Health Services.  [¶]  The California Department of Health Services regulations state that a venipuncture shall be used to collect a blood sample from a living person.  A venipuncture punctures a vein and collects venous blood, not arterial blood.  [¶]  The California Department of Health Services also requires that Alcohol or other volatile organic disinfectant shall not be used to clean the skin where a specimen is to be collected.  Aqueous benzalkonium

---

[24] Docket No. 1 at 21.

chloride (zephiran), aqueous merthiolate or other suitable aqueous disinfectant shall be used."

Defense counsel referred in closing argument to the testimony on this subject as follows:

"Officer Wooden . . . doesn't mark down whether or not the doctor did what the law requires, and use a non-alcohol swab.  She has no idea.

"No idea.  Her response . . . to that question was that, 'Well, he would have used one that wasn't.'

"Was, 'He would have,' you know, a year and a half later, what does that mean?

"She noted specifically the nurse did it, but she didn't note the doctor did anything of the kind, so does that mean at the time she was not being honest and didn't put down an observation she didn't see?

"I mean, what does that mean?  You know, this is a little bit too important for that kind of junk testimony to be relied on.

"You've got to give Mr. Soto the benefit of the doubt on these things, and you were told by their expert that if in fact the doctor used an alcohol swab, and we don't know the answer to that, but if he did, it would skew the test.

"We also know that arterial blood was taken in violation of the law, according to the prosecution expert, Mr. Bowden, so . . . even . . . basic things like taking a blood sample in this case . . . the level of the evidence, I just wonder . . . who would walk out of this courtroom feeling like they have been treated fairly when you've got the law being violated just in collecting blood samples . . . ."

The prosecution described this line of argument and others from the defense as merely "blow[ing] smoke."  The prosecutor submitted:

"[Defense counsel] wants to hope to create something in your minds to cause you to speculate about things . . . .

"[L]ike the smoke that he did on the femoral blood versus venous blood at the time they removed the blood from [Soto] at North Bay Medical Center, and . . . they should have gotten venous blood instead of arterial blood because the doctor, they couldn't get a vein; you had to take it from the artery.  That's what happened out there.

"So he doesn't offer any evidence to say that anything is wrong with that, or you get a different BA just because you took arterial blood; he doesn't offer any evidence to say that there's a problem with this blood test.

"In fact, he concedes, his guy was over a .08.  He basically concedes the goodness of the test itself and how it was drawn when he concedes the 23153's and the 191.5.  It's just smoke . . . .  [I]f you really want to know, 'Hey guys. Is there a problem that the doc did a femoral artery draw as opposed to getting it out of a vein?'

"'Mr. Wong, is that a problem?'  His own expert.

"Mr. Bowden, who is the DA expert, 'Is there a problem?'

"How about Dr. Gill?  Ask him.  'Well, doctor, if they took arterial blood from a defendant who is suspected to be DUI and didn't take any venous blood, are you going to get a different result?'

10

"He doesn't bother putting that on or bother asking questions.  What he's doing, he's trying to suggest to you something.  He wants you to speculate.  That's smoke.  Don't be confused by things like this."

The Court of Appeals then analyzed the effect of those facts.

(2) *Analysis*

A defendant is generally entitled upon request to a "pinpoint" jury instruction relating particular facts to a legal issue that goes to the crux of the defense case or is relevant to the question of reasonable doubt.  (*People v. Saille* (1991) 54 Cal.3d 1103, 1119; *People v. Henderson* (2003) 110 Cal.App.4th 737, 741.)  The defense theory must be supported by substantial evidence and not mere speculation.  (*People v. Roldan* (2005) 35 Cal.4th 646, 715, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see *People v. Waidla* (2000) 22 Cal.4th 690, 735.)  Prejudice from an erroneous failure to give a pinpoint instruction is determined under the *Watson* standard.  (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Earp* (1999) 20 Cal.4th 826, 887.)

The blood sample in [Soto's] case was not obtained in compliance with the regulations insofar as they require that blood be taken from a vein, rather than an artery, and Officer Wooden's failure to record whether the doctor had used a nonalcoholic swab might arguably have supported a finding that this requirement of the regulation was violated as well.  However, while there was substantial evidence that the regulations were violated, there was no evidence, as the prosecutor pointed out, that the violation affected the reliability of the blood test results.  [Soto] offered no proof that the regulatory violation called into question whether he was in fact driving under the influence when the accident occurred; instead, he conceded that fact in holding himself out as the "poster boy" for gross vehicular manslaughter while intoxicated.  Thus, while regulatory violations are generally relevant in determining the weight to which blood test results are entitled (*People v. Williams* (2002) 28 Cal.4th 408, 414; *Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1186-1187 (*Roze* )), they were essentially irrelevant here (compare *Roze, supra* at pp. 1188, 1189 [violations called into question accuracy of test results and could have produced a false positive]).  Since no evidence supported a theory that failure to comply with the regulations rendered the blood test results unreliable, and the theory neither went to the crux of the defense case nor raised a reasonable doubt as to [Soto's] guilt, the pinpoint instruction was properly refused.

[Soto] was not prejudiced by failure to give the instruction in any event.  As just explained, the defense did not hinge on the unreliability of the blood test results.  To the contrary, those results were *helpful* to the defense on the central issue of implied malice insofar as they established that [Soto] had a high level of intoxication that might have prevented him from forming the necessary mental state for murder.  Hence, [Soto] called his own expert to opine that he had a blood-alcohol content of .16 at the time of the accident.  As defense counsel explained to the jury, "So why did the defense have [Wong] come in to testify?  [¶]  And you probably already have

11

guessed it; it all goes directly to the question of my client's mind state. It's really the question of, is this an implied malice murder case, or is this a vehicular gross manslaughter case?"

Moreover, as the People observe, the evidence of implied malice was very strong in [Soto's] case. [Soto] was seen driving in an extremely dangerous manner immediately before the accident. He was highly intoxicated. More than most, he should have appreciated the risks he was taking with human life. He had three prior convictions for driving under the influence, and had signed a plea form confirming that he knew the risks his conduct posed, including the possibility of a murder charge if such behavior continued. He had recently completed an 18-month treatment program where he was informed at least 38 times about the dangers of drunk driving. It is very unlikely that a trier of fact would have found that [Soto] had forgotten all of this experience when he got behind the wheel on the day he killed Kent Boone.

For these reasons, any error in failing to give the instruction in question was harmless under any standard.[25]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[26] It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[27] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[28] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court

---

[25] *Soto*, 2009 WL 3111060 at *2-5.

[26] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[27] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[28] *Jackson*, 443 U.S. at 324 n. 16.

sitting in habeas corpus."[29]   A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[30]   This is especially true where the highest court in the state has denied review of the lower court's decision.[31]

Although it is not directed at the insufficiency of the evidence issue, the Court of Appeal's analysis is nonetheless dispositive.   In this case, the California Court of Appeal determined that, even without the blood test evidence, there was sufficient evidence of implied malice in this case to support Soto's conviction.   Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[32]   Soto bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous;[33] a burden Soto has failed to carry.   The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.   Soto is not entitled to relief under his first ground.

---

[29] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[30] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[31] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[32] *See Jackson*, 443 U.S. at 326.

[33] 28 U.S.C. § 2254(e)(1).

<u>Ground 1:  Ineffective Assistance of Trial Counsel</u>

In his ineffective assistance of trial counsel claim Soto contends that counsel did not conduct an adequate investigation into the method utilized in drawing his blood to discover that it had not been drawn in accordance with the regulations and that counsel did not object to the introduction of the results into evidence.  In rejecting Soto's argument, the Solano County Court held:

> [Soto] fails to state a prima facie claim for effective assistance of trial counsel.  (*People v. Duvall* (1995) 9 Cal.4th 464, 475.)  Nothing in the record evidences that [Soto's] trial counsel was objectively deficient.  A petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional conduct." (*Strickland v. Washington* (1984) 466 U.S. 668, 690.)  [Soto] does not provide any facts or reasonably available documentary evidence, such as affidavits from his trial counsel, stating why counsel chose to argue that [Soto] was too intoxicated to form the necessary mental state for murder, rather than challenge the reliability [of] the blood test,  (*Duvall*, 9 Cal.4th at p. 474.)  Without this evidence, [Soto] has not shown that his trial counsel made unreasonable professional decisions regarding his tactical approach to [Soto's] defense.
>
> Moreover [Soto] fails to shoe [show?] prejudice because, as the Court of Appeal ruled, even if there had been evidence that the blood test was unreliable, there was "very strong" evidence of implied malice in this case.  [Soto] was seen by an eye witness driving in an extremely dangerous manner before the accident, he was highly intoxicated, and he had three prior convictions for driving under the influence. (*People v. Soto* (September 20, 2009, A 123133 [nonpub.opn.].)  As such, [Soto] cannot show that the outcome of his trial would have been different if trial counsel had presented evidence that the blood test was unreliable.  (*Chapman v. California* (1967) 385 U.S. 18, 24; *People v. Roldan* (2005) 35 Cal4th 646, 735.)[34]

In his Petition to this Court, Soto raises for the first time that his trial counsel was ineffective for failing to challenge the admissibility of the expert testimony under the

---

[34]  Docket No. 1 at 21-22.

*Daubert*/*Kumho* standards.[35]  Soto's argument fails on two points.  First, Soto offers no argument that the expert testimony offered in this case does not meet the requirements of *Daubert*/*Kumho*.

Second, even if Soto did, he did not present the issue to the state courts on either his direct appeal or his state habeas proceeding.  This Court may not consider claims that have not been fairly presented to the state courts.[36]  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[37]  A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim.[38]  For these reasons, this Court declines to address Soto's *Daubert*/*Kumho* argument.

In his Traverse Soto again shifts the focus of his argument—arguing that he lacks the mental capacity to formulate the cognitive rationale necessary to support the finding that he had knowledge of the consequences of driving while impaired.  Soto contends that he is unable to speak, read, or write English, has an overall educational level below the first-grade level, never obtained a driver's license, and is generally unable to comprehend ordinary matters.  In support of his position, Soto attaches copies of the results of his TABE® 9 and 10 testing done by the

---

[35] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

[36] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[37] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[38] *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009).

California Department of Corrections.[39]  This Court does not ordinarily consider matters raised for the first time in the traverse.  "The petition must: (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested . . . ."[40]  To the extent that Soto wishes to raise additional grounds, the proper procedure would be to file a motion to amend the petition under Federal Rule of Civil Procedure 15.  In this case, however, such a motion would be futile for two reasons.

First, the amendment would not relate back to the initial filing and would, therefore, be barred by the one-year limitation period of 28 U.S.C. § 2244(d)(1).[41]  Second, because he did not present this argument to the state courts on either direct appeal or in his habeas petitions, Soto has not exhausted his state-court remedies.  Consequently, this Court declines to consider Soto's alternative argument that he was incapable of understanding the consequences of his actions.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Soto must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[42]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[43]  Soto must show that defense counsel's representation was not within the range of competence demanded of

---

[39] TABE® is an educational diagnostic tool for assessing the skills and knowledge of adult learners in reading, math, language, language mechanics, vocabulary, and spelling.  *See* http://www.ctb.com/TABE.

[40] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012) (emphasis added).

[41] *See Mayle v. Felix*, 545 U.S. 644, 655-64 (2005) (discussing at length the interplay between Habeas Rule 2(c) and Fed. R. Civ. P. 15).

[42] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[43] *Id*.

attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[44]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[45]  The Supreme Court has explained that, if the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.[46]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[47]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule,

---

[44] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[45] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[46] *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams v. Taylor*, 529 U.S. 362, 393 (2000).

[47] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

the more leeway courts have in reaching outcomes in case-by-case determinations").[48]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[49]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[50]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[51]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[52] "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."[53]  "Only those

---

[48] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[49] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[50] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (emphasis in the original).

[51] *Id.* at 786.

[52] *Morrison*, 477 U.S. at 382.

[53] *Richter*, 131 S.Ct. at 791 (internal quotation marks and citation omitted).

habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[54]

Soto bears the burden of proving that counsel's trial strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[55] "[Soto] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[56] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[57] "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[58]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[59] The court must then consider those acts or omissions against "prevailing professional norms."[60] Even then, "counsel is strongly presumed to have rendered adequate

---

[54] *Morrison*, 477 U.S. at 382.

[55] *Strickland*, 466 U.S. at 689.

[56] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[57] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[58] *Strickland*, 466 U.S. at 681.

[59] *Id*. at 690.

[60] *Id*.

assistance and made all significant decisions in the exercise of reasonable professional judgment."[61]

Soto has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  Soto presented no alternate attorney's determination challenging counsel's decision to pursue the defense that he was so intoxicated as to be incapable of understanding the consequences of driving in that condition.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[62]

In addition, Soto has not alleged, let alone shown, that even if his trial counsel had objected to the introduction of the blood test evidence, he would have prevailed.  First, there is no evidence that the blood test was tainted by the presence of alcohol, i.e., the use of an alcohol swab to cleanse the area of the puncture.  Soto's contention on that issue is pure speculation.  Second, Soto has cited no decision of a California appellate court that, in the absence of some additional evidence that the results were unreliable, the results of blood tests taken in violation of the regulation is *per se* inadmissible.[63]

Soto has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by

---

[61] *Id.*

[62] *Id.* at 688.

[63] Indeed, decisions of the California Courts of Appeal indicate that a violation of the statutory scheme, standing alone, does not render the test results inadmissible.  *See, e.g., People v. Esayian*, 5 Cal. Rptr. 3d 542, 550 (Ct. App. 2003); *cf. Petricka v. Dept. of Motor Veh.*, 107 Cal. Rptr. 2d 909, 913 (Ct. App. 2001) (applying the presumption of Cal. Evid. Code § 664 that official duties have been properly performed).

any alleged omission as required by *Strickland-Hill*.  This Court cannot say that the decision of

the Solano County Superior Court was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States" or

"was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."[64]  Nor, viewing the matter through the doubly-deferential lens of

*Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal

principle to the facts of the Soto's case within the scope of *Andrade-Williams-Landrigan-*

*Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of

clearly established federal law was not objectively unreasonable.  Soto has failed to establish that

counsel committed any error that was so serious that counsel was not functioning as the counsel

guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by

*Strickland-Hill*.  Soto is not entitled to relief under his first ground.

<u>Ground 2:  Ineffective Assistance of Appellate Counsel</u>

Soto contends that, because his appellate counsel did not raise the ineffective assistance

of counsel and insufficiency of the evidence arguments on appeal, counsel failed to provide

adequate assistance.  The Solano County Superior Court denied Soto relief, holding:

> Finally, with regard to his ineffective assistance of appellate counsel claim, [Soto] fails to state a prima facie case for relief.  (*Duvall*, 9 Cal.4th at 475.)  [Soto] alleges that appellate counsel failed to argue that blood was drawn from an artery rather than a vein contravenes California Code of Regulations, Title 17, section 1219.1.  This argument is wholly without merit.  [Soto's] petition for review and the appellate division both show that this argument was made and denied by the Court of Appeal.  (Petitioner's Petition for Review, 10-13; *People v. Soto* (September 29, 2009, A123133 [nonpub.opn.], 6-7.)

---

[64] 28 U.S.C. § 2254(d).

[Soto] claims that appellate counsel was ineffective because he failed to raise the argument that trial counsel provided ineffective assistance. This claim lacks merit because [Soto] has not shown prejudice. [Soto] raised his ineffective assistance of trial counsel claim in the instant petition and that claim is found herein to be without merit. (*Chapman*, 386 U.S. at p.24; *Roldan*, 35 Cal.4th at p. 735.)[65]

Because neither of the claims had merit, the failure of counsel to raise them on appeal does not constitute ineffective assistance of appellate counsel.[66] Soto is not entitled to relief under his second ground.

## V.  CONCLUSION AND ORDER

Soto is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED.**

---

[65] Docket No. 1 at 22.

[66] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[67]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[68]

The Clerk of the Court is to enter judgment accordingly.

Dated: October 2, 2012.

_/s/ James K. Singleton, Jr._
JAMES K. SINGLETON, JR.
United States District Judge

---

[67] 28 U.S.C. § 2253(c); _Banks v. Dretke,_ 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting _Miller-El_, 537 U.S. at 327)).

[68] _See_ Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.